We'll hear argument next in Case 23-217, E.M.D. Sales v. Carrera. Ms. Blatt? Mr. Chief Justice, and may it please the Court, for over a century this Court has held that the default standard in civil cases is preponderance of the evidence. That default rule should resolve this case. Nothing in the text suggests that Congress intended a clear and convincing evidence standard to apply to the 34 exemptions under the Fair Labor Standards Act. Respondents argue that a heightened standard is appropriate because FLSA rights are important, but a preponderance standard applies to rights against race discrimination, disability discrimination, and rights to organize and to workplace safety, all super important rights. This Court has reserved the clear and convincing standard to deprivations by the government of critical rights that don't involve money damages. This Court has never allowed plaintiffs to use a clear and convincing standard as a sword, and it certainly has never read a clear and convincing standard into a statute for money damages. Respondents also argue that overtime rights aren't waivable, but waivability and standards of proof are unrelated and don't go hand in hand. Waivability goes to who owns the right, the government or the individual, and a standard of proof goes to how hard it is to prove that the right attaches in the first place. Thus, the preponderance of the evidence standard governs non-waivable rights, such as those under the NLRA and OSHA, and heightened standards govern waivable rights, such as those in criminal trials and deportation hearings. Because the Court below applied only the clear and convincing standard, we believe this Court should remand for the application of the preponderance standard. I welcome the Court's questions. Other than the context of actual malice, can you think of any other case where there has been a requirement, this Court has required clear and convincing, where only money damages were at issue? No, the only example we would say is in the water rights cases where they're sovereign, so I don't think that's really money damages, but in those apportionment cases, this Court has long held clear and convincing applies in cases between sovereigns. How would you respond? What do you have to say about respondents' public-private rights argument? Sure, a couple things. I do think a public nature goes to the waivability, and as my opening talked about, that's a distinct issue in terms of standard of proof. But more importantly, the public has an equal interest in the accurate implementation of the Act, and this Court in Encino said the exemptions are equally a part of the statute, and the public has an interest in making sure if it's more likely than not an employee doesn't fall within a category and should be exempt, then under a clear and convincing standard, that employee may be required to pay overtime, even when the purposes of the statute are not only not invoked, but they're counterproductive because it imposes very unjustified costs, particularly under small businesses. How are we supposed to make the argument that the higher standard applies in termination of parental rights and all that, but how are we supposed to make the judgment that concern to remediate the dire labor situations when this Act was passed are similarly worthy of a heightened standard? The disparity in bargaining power between the people who are seeking the wages and the employer and all that. Of course, good points. 1938, though, we cite these cases from both the 1877 and 1914, the Lilienthal's tobacco and the Reagan case involving civil penalties, and one was just, and it cites, you know, centuries worth of precedent or treatises saying the preponderance standard is the background presumption. And I do think the government makes a good point that in the original Act, there was, Congress did speak to a standard of proof. It was in an administrative context for minimum wages, and Congress provided for preponderance of the evidence standard for the administrator of the wage and hour division to exempt certain categories. So we think the government is correct that that is at least some indication that Congress thought a preponderance of the evidence standard. But the more basic presumption is just when you look at all these statutes, Title VII, disability, NLRA, I mean, there's plenty of cases in the labor context, NLRA, OSHA, all those arguments could be made, and the preponderance standard has always governed. Well, how do we apply the particularly important individual interests, then, in thinking about the cases that have had a heightened standard? Because they seem to distinguish cases involving mere money. I think that's the phrase. But when it's minimum wage, it's not mere money in the same way, I guess, to follow up on the Chief Justice's question. How are we supposed to make those value judgments, I guess? Are you saying, and relatedly, are you saying we should never expand the category of where we've done clear and convincing, the Addington category? Or are you saying that this is different in kind from the Addington category where we have applied a heightened standard? So both, let's be clear. I think there's only two ways to get there. You have to do it by the Constitution, which is Addington, or the statute. And it's true that the 1966 case would be where this Court said congressional silence means it's left up to the judiciary to make an independent determination about these kinds of things. But starting with Grogan, and certainly by the time of Octang Fitness and HALO, this Court has basically treated it as an absolute sort of, we look at congressional silence, and that's dispositive. Now, I will say that I've not been able to think of a statutory right where Congress has not addressed a burden of proof that involves a deprivation up to, like, deportation and denaturalization, which are the two examples where this Court read it in. But if this Court wanted to leave that open, I don't think you need to do it as a, well, we'll just throw up our hands and do what we want, but more of a background presumption against which Congress legislates. Congress presumably knows in the 40s and 50s you set out a kind of rule that if it was a particularly important deprivation not involving money damages, then the Court will read into a clear and convincing evidence. But I don't think, I do think it is a question of congressional intent ultimately. And again, I have not been able to think of an example, and I think it is significant that Congress has both codified, superseded, and overruled the deportation and denaturalization context. Congress went in and, you know, very carefully said when it wanted clear and convincing and deportation, overruled it in the denaturalization. It's hard for me to think of a case involving a deprivation of an interest that comes close to the Constitution, like the, you know, civil commitment or right to your children that doesn't involve money damages. And I don't think it's, it would be right to go down to overtime, which I think involves highly compensated employees, and to go down this road of, well, how important is race discrimination as opposed to sex discrimination or religious discrimination and start saying these are semi-fundamental rights too, and Price Waterhouse already put this to bed and said we're going to have preponderance of the evidence standard. Can I just ask a practical question? You ask us to vacate and remand. The SG wants us to reverse, which usually suggests to me that they think the judgment below can't be sustained under any reading. And the other side says regardless of the standard, affirm. Our practice is to remand. But what outcome could a different standard of proof have on the factual findings in this case? So let me address just sort of the, I don't think at least we intended any difference between vacature and reversal. We just copied what the court did in the Starbucks case because it involved a similar misapplication. So we just took identically what you said in your opinion. I don't think the government, so I think the government and we both just think send it back. In terms of no- Well, I don't disagree. Just for a moment, I do think the other side says this was harmless error. Of course. All right. So I don't think we should get into that. The court below should. But I'm asking you, why isn't it harmless error? Right. Yeah. So we think the ultimate, we think there's more than ample evidence for the court to find and will find below by preponderance of the evidence. And the main reason and the regulation is cited at page 43A of the PET app, that whether your primary duty is one of making sales, this is an outside salesman. It's not the time spent, but it's the most important, i.e. the character. And time spent is one factor, but not dispositive. And the things that we would point to, and I think again, the evidence is great for us. One, it's the testimony of the CEO, which is that just when she started the business, your job is to make sales, is to push that inventory and to increase the product. And second, there were three salesmen that said that the sky was the limit for them and their ability to make sales at chain stores and they lost track. Third, there was testimony of the Walmart former buyer for sauces and dressings. And either he or she, I can't remember, said that planograms, which are basically your floor plans for your inventory shelf, that those were honored in the breach. It's true that the Safeway and Giant people said, we can't control where we put the food. But the Walmart person said, listen, sometimes we let them, you know, sell us more tortillas or whatever they were selling and get more space. And finally, and the fourth one, and I think it is important, at least to our client, in terms of common sense, they are called sales representatives and the collective bargaining unit designated them as such. And nobody complained about overtime. So this was a, you know, longstanding provision in the CBA. So I think all of those things would lead to a sufficient basis. And the only way this court could find harmless error, of course, would be to find that no reasonable fact finder could find by preponderance of the evidence. On the last issue you raised, which was the collective bargaining issue, this right of overtime is not waivable by an employee, correct? Correct. But you're not using it in that sense. No, not at all. You're using it in the sense of what they perceived as the most important part of their function. Absolutely correct. That it was just the union, you know, and they were paid on a commission basis that necessarily wasn't based on new sales. So this is more completely atmospherically inconsistent with their title. Not in any way, not in any way binding. Thank you. The Court of Appeals here applied its own circuit precedent. What's your understanding of where that circuit precedent came from? How it arose? I mean, it arose a long time ago, relying on a Tenth Circuit precedent. And to be fair to the Fourth Circuit, the Tenth Circuit did say in that decision, it was talking about who had the burden, but it did say the employer would have to put clear and affirmative proof forward. But then later the Tenth Circuit said, but what we meant by that was not clear and convincing evidence. We were just, you know, we weren't supposed to take this literally. We just meant you have, the burden is on the employer, but it's just a preponderance of the evidence. And the Fourth Circuit just never deviated from it. They have been asked twice en banc to overrule it, and they've declined twice to overrule it. But it relied only on the Tenth Circuit opinion, not on our cases? Correct. Yeah. Just the Tenth Circuit. No, and I don't think, again, we tried en banc and I don't think the Fourth Circuit has ever articulated a rule. And it is somewhat noteworthy that they've only applied it, I mean, they're doing it in the overtime case too, which seems, you know, the least policy basis for it. And the only other thing I just want to say on the preponderance of the evidence is the District Court said, just in the connection of the hearing, and there's a lot to be said on the liability question, obviously a throwaway. The District Court's going to make its own independent decision on remand. But we don't think there's anything that could be said where this Court, sitting as nine members, would find that no reasonable fact finder could conclude that a preponderance of the evidence wasn't satisfied. Can I ask you, you started off by saying that the default standard of proof was the preponderance of the evidence standard, and that it's a matter of congressional intent. And so I guess the question is, how clear was it as of 1938 when the FSLA was passed that preponderance of the evidence was the standard of proof as a default? The cases, many of the cases that are cited are actually post-1938 cases. So what's the best evidence that Congress was actually legislating against the preponderance of the evidence standard? In that footnote too, where we list all the cases, there are only two cases, to be sure, that were pre-1938. It's the Lilienthal's tobacco from 1877, I think, and United States versus Reagan, which is 1914. But that case is a civil penalties case. And it was basically saying, even though if hit with these civil penalties, you could be subject to a criminal law, preponderance of the evidence standard applies. Now in Reagan, what the Court did was not only cite treatises, but it canvassed state law and federal cases. In the Lilienthal's tobacco, it just cited two treatises. And I think those treatises are, I don't know, I have the dates, but they're in the 1800s. And they're Wigmore and whoever else the famous evidence person is. General civil litigation. And so, you know, the civil penalties. So it's just, and then besides just those treatises and the two Supreme Court cases, I think the government did make a good argument that Congress, when it thought about the issue in the administrative context, said it thought preponderance of the evidence was sufficiently protective of workers in the minimum wage context, which I think is a little more sympathetic for the worker. So it's worse for the other side. And I'm, I don't, I'll go to. Thank you, Counsel. Nobody. Okay. I don't think so. Maybe. Okay. Sorry. Ms. Brown. Thank you, Mr. Chief Justice, and may it please the Court. When Congress does not address the standard of proof in a statute, this Court has long recognized that the preponderance of the evidence is a default rule for civil actions. The Court has only departed from that default in a tiny number of cases where the Constitution required it or in cases involving a significant deprivation more dramatic than money damages, like deportation, denaturalization, and expatriation. Respondents' claims seeking monetary remedies for alleged violations of the FLSA's overtime requirements is not remotely comparable to those cases. Respondents don't really argue otherwise. Instead, they offer an assortment of policy reasons for favoring employee interests, but the policies promoted by the FLSA are materially similar to workplace protections like those in Title VII that this Court has recognized are adequately protected by the default standard of proof. The Court should apply its longstanding precedent and hold that the preponderance of the evidence standard applies here, remand for the lower courts to decide whether the petitioners met that standard at the first instance. I welcome the Court's questions. Would this be a bit stronger case on Respondent's part if Respondent had a minimum wage claim? So I think that the policy in support of minimum wage is certainly an important policy. I would say that the same standard would apply in that context. It's still a claim for money damages. And in that context, I think the statutory history that we cite on pages 14 and 15 of our brief would be even more relevant, where Congress did make the judgment in the minimum wage context that the preponderance of the evidence standard would apply for the exception when the administrator was making that determination. So I think the same standard would be applicable there. Did I understand your opening to say that if it's just money, you wouldn't address the clear and convincing standard at all? So the way that this Court has framed the test here, essentially, is that the deprivation needs to be a significant deprivation. And it is never applied outside of the First Amendment context, the clear and convincing evidence standard, when it's just money damages. And so I think, as a general matter, the presumption is at its strongest when you're in a case dealing with conventional remedies like money damages, injunctive relief, things like that. The very, very narrow category of cases in which this Court has departed from the default standard without a constitutional backdrop is in these deportation, denaturalization, expatriation cases, where there's a coercive government action that's being taken. But what do we do about the fact that the money damages here are actually, I thought, doing more significant work than just providing damages in that particular scenario? So, I mean, when Congress enacted the FLSA, they talked about the fact that there were interests at stake that were beyond money damages, that setting up the statute in the way that they did ensured that businesses don't gain a competitive advantage by misclassifying employees. It protects certain groups from substandard wages and thereby protecting health and well-being. There was also the notion of spreading employment through the application of this law. So isn't this more than just money damages? I mean, I take your point that it might not be denaturalization, but I would think the government would say the interests go beyond just pure money damages. Certainly we recognize there are very important policy interests at stake in this case in the FLSA and that Congress legislated with those in mind. I think the same thing is true for Title VII. It's not just about the individual employee who's seeking damages. It's about the broader interest in eradicating discrimination from the workplace. Congress often makes these policy findings in its statutes where it lays out all of the interests that are at stake here. And those can be addressed through a variety of means, for example, through this wavability issue or wavability aspect of the statute where it can't be waived. And so that is how some of those policy concerns are addressed. But the heightened standard of proof has just never been used as the kind of tool that would be addressed in those kinds of instances. Otherwise, I think it would risk making that standard no longer, the preponderance of the evidence may no longer be the default standard in those cases because those kinds of interests are very frequently at stake when Congress is legislating. I wanted to just make a couple of points, if there are no further questions on that. The respondents have asserted the variety of reasons to depart from the default here, and the Court has never accepted those kinds of reasons in cases dealing with conventional remedies. And I think it's important here to note that no court has actually accepted them because the Fourth Circuit here, as Ms. Blatt already discussed, did not actually come up with any reasoned basis for the decision. It misconstrued this earlier precedent, but it never tried to reconcile the heightened standard of proof with the Court's precedence here and with the very narrow set of circumstances in which the Court has suggested that it would be appropriate. So the reasons that respondents have provided here are generally the policy interest in overtime requirements, which again, we agree are important, but other statutes also implicate very important reasons. And as this Court held in Grogan, I think the exemptions here are also a part of the Congressional policy and are also a part of what Congress was doing when it was balancing the interests here. Can I ask you, is this the same standard of proof that would apply to the government, the Department of Labor, if it is bringing suit to enforce the FLSA? Yes, it's the same standard of proof. And it's the same standard that the Department of Labor applies in its own administrative proceedings? So the Department of Labor enforces this statute through district court litigation, so it would always be the same standard. The OPM, there are other administrative, OPM administers it for the government on behalf of government employees, and those go through litigation as well in the same standard. Does the government have an idea of how often the standard of proof is dispositive in a case like this or any other? It's difficult to say. I mean, the amicus and the parties here have tried to kind of point to various cases where they think the standard may or may not have been dispositive. In the Department of Labor's cases, its own litigation, where we might have more of an idea, the standard of proof I think is pretty rarely dispositive, but that's likely because most of the litigation in the context of the Department of Labor is about the interpretation of an exemption or whether an employee is covered by the FLSA at all, whether they are an employee or an independent contractor. So in those cases, in the cases that the department has litigated, I don't think it often makes a huge difference, but it certainly can make a difference in edge cases here, and I think that the petitioner should be given the opportunity to show that this is one of those cases. One final question. Oh, sorry. No, go ahead. I was just going to say, finally, is the government taking the position that this same standard should apply to all of the exemptions? Yes. I don't think that there's any reason basis to distinguish among the exemptions. If there were a different background rule in place, maybe when a different exemption was enacted, then you might think that Congress had a different rule in mind, but this has been the long-standing background presumption since 1878 in the Lilienthal's tobacco, even before that, I think. In Lilienthal's tobacco, it's kind of stated as though it were already a well-established rule, and so I don't think that there's any basis for concluding that Congress would have had something different in mind for any of the different exemptions. Just going back to Justice Sotomayor's question, is there any difference between your recommendation to reverse and Ms. Blatt's to vacate? No. We originally, at the certiorari stage, had recommended a summary reversal, and that's just kind of the colloquialism that this Court uses for deciding cases without full merits briefing, and so we kind of just used that same formulation when we were making our argument here as well. But we don't think that the Court needs to reach out and decide whether or not the actual evidence here was sufficient to show that the employees fell within the exemption. What happens when the case goes back? I mean, you've got a factual record. Does the Court just say, I'm going to look at this under predominance rather than clear and convincing? I guess I don't see how you would have different evidentiary proceedings given the standard of proof. Right. My understanding would be that the Court of Appeals would likely just remand this also back to the District Court that was making the individual factual findings, and because this was a bench trial, the District Court will have the full transcript, all of the evidence that was put in at that point, and then the District Court will just make the determination. So the District Court is going to look at this and say, well, I evaluated this under clear and convincing and decided this, but if it's just preponderance, it comes out the other way. It could make that determination. As the petitioners note, the District Court did cite the standard of proof several different times in its decision and mentioned it during the argument as well. And so there is a possibility that the Court would reach that determination, and we should at least allow the Court to have the opportunity to do so. Is it your position on this record that there is the potential, evidentiary potential, of a different outcome? We haven't taken a position on whether the right outcome here under the preponderance of the evidence standard is to find an exemption or not. I do think that the lower court should be given that opportunity. We don't think that there's anything we've seen so far to absolutely foreclose that, but again, we haven't taken a position on what the overall outcome here should be. Thank you. Thank you. I'm sorry. Justice Alito? Should we just draw a clear line and say when a higher standard of proof is not required by the Constitution and there is no liberty interest at stake, then the standard is, we presume conclusively, that the standard is preponderance? So I don't think that there's any need to take that kind of further step, particularly in this case. This isn't an area where there's been a lot of confusion among the lower courts as to how this Court's standards apply. There are not a lot of other cases in which we're seeing lower courts applying a heightened standard of proof absent statutory text or absent the case falling into one of these categories that the Court has already addressed. So I don't think it's necessary to do that. I will also say that I think that the Court's decision in Grogan goes pretty far towards saying something like that. It says essentially that statutory silence is inconsistent with the presumption or with the understanding that Congress would have intended a heightened standard of proof. And the only way I think that presumption is overcome is if it is a significant deprivation, which again has really been limited to those kind of three cases that I've talked about, deportation, denaturalization, and expatriation. So I don't think it's necessary to kind of take that further step. There's not like a lot of confusion in the lower courts on that point. Well, then, go ahead. What methodology do you think we should apply in determining whether economic interests are particularly important under the test? So I think that you should apply the same presumption that you've applied in every other case, including in Grogan, which is that when there is a conventional remedy in civil litigation, the very, very strong presumption is that the preponderance of the evidence standard is going to apply. And this Court has never recognized or never seen a case in which that is the lay of the land. And that would nevertheless overcome that presumption. And there may be a time in which there are like common law background principles that would inform the way the statute is interpreted. That was the case, for example, in Microsoft v. I4I, where Congress did not specifically say that the preponderance or that the clear and convincing evidence standard should apply, but there was a background common law principle that in patent invalidity cases, a patent's invalidity has to be shown by clear and convincing evidence, and that informed the way the Court read the statute. So certainly, I would want to leave that open as well. Thank you. Anyone else? Thank you, counsel. Ms. Bateman. Mr. Chief Justice, and may it please the Court. When neither the Constitution nor any statute sets a standard of proof to govern a particular factual determination, the degree of proof required for any given claim or defense is a question traditionally left to the judiciary. Here, application of the clear and convincing standard of proof is necessary to carry out the explicit public purpose of the Fair Labor Standards Act. Section 202B of the Act declares that it is designed to eliminate, as rapidly as practicable, labor conditions that fall below a minimum standard of living. The preponderance of the evidence standard falls short of that purpose because it allocates the risk of factual error equally between employers and workers. But the FLSA is not your typical civil statute, where only individual monetary damages are at stake, and so, as far as the public is concerned, the interests of plaintiff and defendant are in equipoise. Instead, it's a statute that protects both the worker's right to a fair day's pay for a fair day's work, but also the public's right to an economic system that doesn't depend on and inexorably lead to the impoverishment and immiseration of the American worker. Congress implicitly recognized in Section 202B that the social disutility of a factual error that deprives a worker of minimum wages or overtime to which he is entitled is greater than the social disutility of imposing those costs on the employer. And that lopsided disutility analysis, under principles long recognized by this Court, calls for requiring the employer to prove an exemption clearly and convincingly. It's also appropriate because employers are likely to possess and control evidence relevant to these kinds of factual determinations. And employers can and sometimes do manipulate evidence in their favor, such as job descriptions or titles. Unchecked, these factors lead to disproportionate errors of fact-finding in favor of employers. Thus, it's sensible to insist that where an employer seeks to prove that an employee is exempt from these protections, the employer must do so clearly and convincingly. I welcome the Court's questions. What is the standard in discrimination cases? You're right, Your Honor. It is a preponderance of the evidence. So why should FLSA be treated more advantageously than the discrimination cases? I think the key difference between the FLSA and Title VII is waivability. And Title VII vindicates certainly extremely important rights, but although Title VII vindicates a public interest, it doesn't expressly create a public right separate and independent from the right that accrues to the individual. And I think an example might be illustrative here. An individual can feel free to sign a severance agreement saying, I agree to waive any Title VII claims that might have accrued during the course of my employment for $50. By contrast, this Court has said that private waivers of FLSA back wages or liquidated damages would, and I quote, nullify the purposes of the act. So you cannot waive or compromise those claims unless there's a bona fide dispute as to the amount owed. So if an employer were to do the same thing in the FLSA context and say that he would settle his claims for $50 and it was later found that the employee was owed $100 of back wages, that waiver just wouldn't be operable. The Department of Labor or the employee could still pursue that remaining $50 in litigation. The petitioner in her brief says that this Court has never permitted plaintiffs to use the clear and convincing standard as a sword against defendants. Is that right? I think I suggest that the premise of the statement might be inaccurate, because here exemptions, FLSA exemptions are only even arguably applicable at the point where a fact is proven, his or her prima facie case. So at that point, there's already a right vested in the employee for back wages or overtime pay to which he or she is entitled. How does that address the question of using the clear and convincing standard as a sword for defendants? I missed the connection. Sorry, Your Honor. I think my point is merely that at the point at which the right vests in the employee, the standard would be used as a shield to prevent an erroneous deprivation of the right that had already accrued to the employee. So I'm discerning a methodological difference between the two of you that I'd like to ask about. Petitioner said that the standard of proof question is ultimately a matter of congressional intent. And I take you to be pushing back on that a little bit by your opening when you said that when there's no constitutional requirement and Congress is silent, the standard of proof is a question traditionally left to the judiciary. And you seem to be inviting us to be weighing these values. And I thought, at least the way Petitioner has set this up, is that it's not our role to do that, that what we should be doing, she says, is determining whether Congress's silence meant that it acquiesced to the default rule, which is preponderance of the evidence. So can you speak to the difference in methodology? Certainly. I think Petitioner's methodology is inconsistent with the way this court has actually analyzed standards of proof issues. And I think the immigration cases are a really great example. Starting in Schneiderman, this court grappled with the standard of proof in denaturalization proceedings. And those proceedings took place under a very specific portion of a statute that even contained a host of evidentiary directives, but it didn't contain a standard of proof. But isn't that because they were sort of, I think everyone can see that there's this kind of special category of cases based on their interests, whether it's constitutional interest or sort of a quasi-constitutional, because of the nature of the deprivation, due process kind of thing, the court has work to do. But I thought we sort of got rid of that at the top by sort of assessing this not as being in one of those categories. And so then the question becomes, how does the court treat it? Well, I think, again, the immigration cases are a good example. And I take Your Honor's point that perhaps there's a quasi-constitutional interest at play, but that interest is never articulated by the court in Schneiderman or in Wood. But what do you do with Grogan? I mean, I thought from then on, the sort of way in which we thought about this was, you know, there's no constitutional interest here. Congress didn't speak to it. So what does Congress's silence tell us about what it intended with respect to the cause of action that it was creating? I think cases like Grogan and Herman and McClain are illustrative that our view of the methodology is the more accurate one, because in those cases, the court did undertake a balancing analysis. It didn't just observe a statutory lacuna and decide, well, certainly preponderance of the evidence applies. It weighed the interest at stake. And granted, in those cases, it determined after that weighing preponderance of the evidence was the relevant standard. Did it do so on the basis of the court's own view of the interest at stake, or was it trying to ascertain how Congress viewed those interests? I think the structure and nature of the statute is relevant to the court's determination of how it manages these factual questions. Ultimately, of course, courts will answer these sorts of procedural questions consistent with general principles that have emerged from other cases. And those principles, I think, do embody a default rule in a weak sense, which is that when there's a statutory lacuna, those questions are reserved for the courts, and that in civil litigation, issues tend to be decided under the preponderance of the evidence unless the reasons that courts have developed for exercising a more stringent standard apply. So I think the question here is whether those reasons are present in this case. Do you think that there are any other contexts in which we should say clear and convincing evidence? I hesitate with should. I will say that there are other contexts. Well, you said it's up to the courts to figure this out. So I'm just wondering, is this a kind of this case and this case only, and if so, why? Or is this the argument, no, there are a variety of areas in which it should be a clear and convincing evidence because of the following reasons. As far as I'm aware, it's in the FLSA, or we would advocate for the FLSA context and the FLSA context only, and that's because of the unique nature, the non-waivability of the right. It's also because it's the statement of purpose, which Congress embodied in the statute, is incredibly broad. It's an economy-wide regulatory scheme. There are also other indicia that Congress thought the FLSA was sort of a sui generis statute, for example, permitting the collective action mechanism. Altogether, these indicate that Congress thought this was an exceptional statute for which a heightened standard of... The government provides lots of benefits that are critically, monetary benefits that are critically important to some people. Would you have us say that none of those can rise to the level of importance that is present when what's involved is overtime payments under the FLSA? I think that necessarily, this is a question left to the judiciary to ascertain in a case by case basis, but... Yeah, well, how would we go about doing that? Say it's the termination of welfare benefits. Is that less important than this? Certainly not. But I think one operative question is whether those rights are waivable by the individual. And because they're not waivable in the FLSA context, that is an indicator that there's a broader remedial scheme at issue than just individual monetary damage. What about revocation of an occupational license for somebody whose whole livelihood depends upon pursuing that license, pursuing that occupation? Somebody's worked for 30 years as a barber, and let's say the District of Columbia yanks the license to operate a barbershop. I think if there is a statutory... If there is statutory silence on that matter, as far as I can see, it would be no reason to believe that a higher standard of proof would be necessary to carry out the statutory scheme at issue. I think, again, the FLSA is just such a unique statute in terms of its breadth, its statement of purpose, and its remedial nature, its non-waivability. Well, if the test is whether it's particularly important and you want the judiciary to decide whether things are particularly important, then we would need some methodology to determine whether something is particularly important. Yes, Your Honor. I think that's right. I think this Court can adhere to the standards that it's developed in previous cases and determine that, you know, a right is particularly important where it implicates not just individual monetary damages. Well, but I mean, I think it's the same point Justice Alito was making about the Clean Water Act, right? There's a big statement of purposes there. It's necessary to preserve life and everything else. And so if you're suing somebody under that, why aren't they put to, they the polluter, a higher standard of proof to prove that they're not doing, they're not polluting the environment, they're not endangering people's lives through their emissions? Again, I would say if Congress hasn't spoken as to the evidentiary standard of proof, then the Court has to determine using a host of factors, including the importance of the right, what the operative standard of proof ought to be. It's really a question of judicial administration. And because here the right is non-waivable, that suggests that Congress did believe that this is not your mine run civil litigation type case where only individual monetary damages are at stake. So could you say a little bit more about non-waivability? Because that is the one thing that you have that seems, on your account, to make this, the FLSA, different from a variety of other things that we could think of. I mean, is that right? Are there really no other non-waivability rules of the same kind? And if so, where did this one come from? Why does it exist? I think it, yes, it is unique. And I think it exists because of this Court's jurisprudence interpreting the Fair Labor Standards Act, going back to Brooklyn Savings Bank, where it's such an important right to preserving... We created it, not particularly based on any statutory language? Well, I think this Court was fairly interpreting the statutory language in the Fair Labor Standards Act when it reached this determination that to waive any portion of it would nullify the purposes of the Act. And I think that goes back to the public rights that are enshrined in the Act. Of course, the minimum wage is designed to eliminate, you know, substandard conditions for the individual, but it's also designed to eliminate the competitive advantage enjoyed by goods produced under substandard conditions. So that's sort of the public valence of the minimum wage provision. In terms of the overtime provision, it's not just meant to protect the individual from the evil of overwork, but also designed to increase overall employment by widening the distribution of work. And both of these provisions really only work if they're adopted economy-wide. Otherwise, it permits bad actors to enjoy competitive advantage, and it disadvantages good companies who wish to adhere to the regulations. Thank you, counsel. Thank you. For a rebuttal, Ms. Blatt. Thank you, Mr. Chief Justice. So just one thing on the sort of the balance for workers. I just wanted to point out, Justice Jackson, the FLSA does provide for liquidated damages as the norm. So at least in that sense, the employees do get double damages when there's a finding of liability. And at page 26A, the district court says that's the norm. So in addition to things like non-waivability, there's liquidated damages. Mr. Chief Justice, we think it should be the same record. The court already heard all this. We think the court can look at it just based on it. In terms of waivability, we cited in our brief and in my opening the NLRA and OSHA rights aren't waivable. The NLRB certainly thinks those rights are not waivable, and so does OSHA. Those are both workplace rights. And I just cited in the brief the workplace ones. There's, throughout the U.S. Code, non-waivable rights. But we could talk endless about Article 3. I don't think that's waivable either. And we could talk about who's public and why that's in there. But all kinds of separation of powers issues, no one thinks that we start importing burdens of proof into Article 3 rights. And then just on the bit about sort of the policies of the Act after Encino, you know, half the statute is the exemptions. And by definition, if it's more likely than not that an employee is exempt, that means the nature of the employment is such that the employer can't hire more workers. Because if there's a salesman or a manager or an administrator, you know, they have certain routes, certain sales representatives. And what happens is the employer will just pay the overtime. And ultimately, especially for small businesses operating at the margin, you're just talking about laying off workers. And thank you. Thank you, counsel. The case is submitted.